IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

JAMES E. JACOBSON, JR.,

               Plaintiff,

      v.

AH GRESHAM PARK, LLC; AH ALBION
HOUSE, LLC; TMG PROPERTY
MANAGEMENT SERVICES NW, LLC; and
ATLAS PROPERTY MANAGEMENT, jointly
and severally,

               Defendants.

Case No. 3:25-cv-01006-SB

**OPINION AND ORDER**

**BECKERMAN, U.S. Magistrate Judge.**

Plaintiff James Jacobson, Jr. ("Jacobson"), a self-represented litigant, filed this in forma pauperis ("IFP") action against Defendants AH Gresham Park, LLC ("AH Gresham"), AH Albion House, LLC ("AH Albion"), TMG Property Management Services NW, LLC ("TMG"), and Atlas Property Management ("Atlas") (together, "Defendants"). Jacobson asserts claims for violations of the federal Fair Housing Act ("FHA"), Americans with Disabilities Act ("ADA"),

PAGE 1 – OPINION AND ORDER

Oregon Residential Landlord and Tenant Act ("ORLTA"), Oregon's financial abuse statute,[1]

fraud, negligence, conversion, trespass to chattels, breach of the implied covenant of good faith

and fair dealing, intentional infliction of emotional distress ("IIED"), and declaratory and

injunctive relief.

Defendants move, pursuant to Federal Rules of Civil Procedure ("Rule") 12(b)(1) and

12(b)(6), to dismiss for lack of subject matter jurisdiction and failure to state a claim upon which

relief can be granted. The Court has jurisdiction under 28 U.S.C. §§ 1331 and 1367. For the

reasons explained below, the Court grants in part and denies in part Defendants' motion to

dismiss and dismisses this action with prejudice because Jacobson's claims are barred by res

judicata.

## BACKGROUND[2]

### I.    FACTS

Jacobson is a sixty-nine-year-old retiree who lives on a fixed income, uses a wheelchair

for mobility, and requires a disabled parking permit and passageways that are sufficiently wide

---

[1] Courts refer to Oregon Revised Statute ("ORS") § 124.110, which is part of the "framework" that "[ORS] §§ 124.100 through 124.140 establish . . . for bringing a civil action for abuse of a vulnerable person," as "Oregon's financial abuse statute." *Bates v. Bankers Life & Cas. Co.*, 849 F.3d 846, 847 (9th Cir. 2017); *see also* OR. REV. STAT. § 124.100(1)(a), (e) (explaining that a "'[v]ulnerable person' means (A) [a]n elderly person[, i.e., a person who is sixty-five years of age or older]; (B) [a] financially incapable person; (C) [a]n incapacitated person; or (D) [a] person with a disability who is susceptible to force, threat, duress, coercion, persuasion or physical or emotional injury because of the person's physical or mental impairment").

[2] The Court draws the facts and procedural history from Jacobson's second amended complaint and matters over which it may take judicial notice. *See Tohono O'odham Nation v. U.S. Dep't of the Interior*, 138 F.4th 1189, 1194 n.4 (9th Cir. 2025) (noting that a court's "review of a Rule 12(b)(6) motion to dismiss is limited to the complaint, materials incorporated by reference into the complaint, and matters of which [it] may take judicial notice") (simplified) (quoting *Mauia v. Petrochem Insulation, Inc.*, 5 F.4th 1068, 1071 (9th Cir. 2021))); *see also supra* page pp. 3 n.3, 4 n.4, & 9-11 (addressing Jacobson's operative pleading and judicial notice).

PAGE 2 – OPINION AND ORDER

and graded for his wheelchair. (*See* Second Am. Compl. ("SAC") ¶¶ 1-2, 4, 13, 41-42, ECF No. 15.) For six years, Jacobson has lived at the Gresham Park Apartments (the "GPA") in Gresham, Oregon. (*Id.* ¶¶ 2, 26.)

AH Gresham, a Utah limited liability company, owns the GPA. (*Id.* ¶¶ 18-19.) AH Albion, a Utah limited liability company, is AH Gresham's sole member. (*Id.*) TMG, a Washington limited liability company, managed the GPA during most of the relevant time period. (*Id.* ¶ 20.) Atlas, which is the assumed business name of Atlas Management, LLC, an Oregon limited liability company, recently succeeded TMG as the GPA's manager.[3] (*See id.* ¶¶ 11-12, 21-23, 25.)

In 2020, Jacobson began asking for a "simple space swap" because he needed access to a wheelchair-accessible parking spot that the GPA's management had assigned to "other tenants." (*Id.* ¶¶ 4, 13, 42-43, 54.) The GPA's management repeatedly denied Jacobson's accommodation request. (*Id.*)

That same year, the GPA's management started overbilling Jacobson for utilities and "tack[ing] on" unwarranted "late fees" to his account. (*Id.* ¶¶ 8, 44.) At the same time, and as a 2023 city inspection later confirmed, the GPA "ignored basic habitability duties," such as a failed ground fault circuit interrupter ("GFCI") "outlets, sewer backflows, inoperative ventilation,

---

[3] The Court takes judicial notice that according to the Oregon Secretary of State's website, Atlas is the assumed business name of Atlas Management, LLC, an Oregon corporation with its principal place of business in Portland, Oregon. *See Hogan v. NW Tr. Servs., Inc.*, No. 10-cv-06027-HO, 2010 WL 1872990, at *3 (D. Or. May 7, 2010) (taking "judicial notice that according to the Oregon Secretary of State's public records, Halligan & Associates is the assumed business name of KDW, Inc., an Oregon corporation with a principal place of business in Bend, Oregon," and noting that "the information contained on the Secretary of State's corporation division's public website cannot reasonably be disputed"), *aff'd*, 441 F. App'x 490 (9th Cir. 2011); FED. R. EVID. 201(c)(1) (noting that "[t]he court . . . may take judicial notice on its own").

PAGE 3 – OPINION AND ORDER

rooms without heat, broken locks, and exterior lighting that remained inoperative for years."

(*Id.* ¶¶ 3, 5, 35-36, 68.)

Between 2021 and 2024, the GPA's security and maintenance issues "resulted in multiple

burglaries," contractors' removal of "personal property" from Jacobson's "private patio," and the

theft of Jacobson's "prototype device" (i.e., a "significant portion" of a disaster relief system,

which Jacobson "value[s] at more than $1 million" based on "material and labor cost"). (*Id.* ¶¶ 5-

7, 27-29, 32-33, 37-39, 83-84.) In spring and summer 2024, the GPA also sent Jacobson four

eviction notices during a thirty-day period, failed to respond to his letters "proposing mediation

and offering to resolve disputes without litigation," and "refused to participate in the Oregon

Eviction Diversion Program" or "acknowledge [his] status as a disabled person[.]" (*Id.* ¶¶ 10, 45,

49.)

The following year, in April and May 2025, the GPA notified Jacobson that it planned to

increase his rent by ten percent and the GPA's newly appointed on-site manager, Atlas,

"immediately revoked parking privileges for mobility devices and began refusing to accept rent

unless [it was] accompanied by a complete waiver of disability accommodation requests."

(*Id.* ¶¶ 24-25.)

## II.    PROCEDURAL HISTORY

In May 2023, Jacobson filed a small claims action against AH Gresham, AH Albion, and

TMG in Multnomah County Circuit Court.[4] (Decl. Grant Stockton Supp. Defs.' Mot. Dismiss

---

[4] The Court takes judicial notice of the dockets from Jacobson's previously filed state and federal actions. *See* Docket, *Jacobson v. AH Gresham Park, LLC*, No. 23SC13915 (Multnomah Cnty. Cir. Ct. filed May 15, 2023); Docket, *Jacobson v. AH Gresham Park, LLC*, No. 3:23-cv-01551-HZ (D. Or. filed Oct. 23, 2023) (docketing Jacobson's notice of voluntary dismissal on May 6, 2024); Docket, *Jacobson v. AH Albion House, LLC*, No. 25CV00838 (Multnomah Cnty. Cir. Ct. filed. Jan. 6, 2025); *see also Luckey v. Mitchell*, No. 22-16556, 2023 WL 6389399, at *1

("Stockton Decl.") ¶¶ 1-2 & Ex. 2 at 1-7, ECF No. 17 at 19-28.) Like the present action, Jacobson alleged that the named defendants and/or their contractors failed to return personal property that they removed from Jacobson's patio during a construction project. (*Id.* Ex. 2 at 1, 5-6.) Jacobson requested $9,172.08 in damages from the named defendants for, among other things, his missing "Job Site Box" and "electrical distribution components" stored therein. (*Id.* at 5-7.)

In October 2023, Jacobson sued AH Gresham, AH Albion, TMG, and others in federal district court. Docket, *Jacobson v. AH Gresham Park, LLC*, No. 3:23-cv-01551-HZ (D. Or. filed Oct. 23, 2023). In May 2024, Jacobson voluntarily dismissed his federal lawsuit. *See id.* (terminating Jacobson's case on May 8, 2024, two days after he filed his notice of voluntary dismissal).

In January 2025, Jacobson commenced a second state court action against AH Albion and TMG in Multnomah County Circuit Court. *See* Docket, *Jacobson v. AH Albion House, LLC*, No. 25CV00838 (Multnomah Cnty. Cir. Ct. filed Jan. 6, 2025). Two months later, the state court transferred Jacobson's small claims action to its civil department. *See* Docket, *Jacobson v. AH Gresham Park, LLC*, No. 23SC13915 (Multnomah Cnty. Cir. Ct. filed May 15, 2023) (closing and "transferring" Jacobson's small actions to the civil" department on March 14, 2025) (simplified).

The state court did so because Jacobson requested a transfer in the amended complaint that he filed against AH Albion and TMG in his second state court action. (*See* Stockton Decl. Ex. 3 at 1-2, 25, noting that Jacobson dated his amended complaint March 5, 2025, stated

---

n.1 (9th Cir. Oct. 2, 2023) (demonstrating that a court may take "judicial notice of [other] court dockets").

"transfer from small claims case #23SC13915" in the caption, and alleged that his small claims action had proved "insufficient to address [his] issues in their totality," he incorporated his small claims action by reference, and he transferred his small claims action to his second state action because of the "numerous claims that occurred after the filing of the small claims action").

The state court docketed Jacobson's amended complaint on May 8, 2025. *See* Docket, *Jacobson v. AH Albion House, LLC*, No. 25CV00838 (Multnomah Cnty. Cir. Ct. filed. May 8, 2025) (docketing the amended complaint on this date and after related filings). As detailed further below, Jacobson's amended complaint was based on the same allegations and claims that he presents here.

On June 24, 2025, after Jacobson lodged objections, the state court entered a judgment dismissing Jacobson's second state court action with prejudice. (Stockton Decl. Ex. 5 at 1-14.) After doing so, the state court denied Jacobson's request to vacate the judgment and Jacob filed an appeal, which remains pending in state court. *See* Docket, *Jacobson v. AH Albion House, LLC*, No. 25CV00838 (Multnomah Cnty. Cir. Ct. filed. June 26 to Dec. 17 2025) (noting as much).

## LEGAL STANDARDS

### I.    FEDERAL IFP STATUTE

"The federal [IFP] statute, codified at 28 U.S.C. § 1915, allows an indigent litigant to commence a civil . . . action in federal court without paying the administrative costs of proceeding with the lawsuit." *Denton v. Hernandez*, 504 U.S. 25, 27 (1992). The IFP statute provides that a "court shall dismiss the case at any time if the court determines that . . . the action . . . (i) is frivolous or malicious; (ii) fails to state a claim on which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from such relief." 28 U.S.C. § 1915(e)(2)(B); *see also Lopez v. Smith*, 203 F.3d 1122, 1129 (9th Cir. 2000) (en banc) ("Section

1915(e) applies to all . . . [IFP] complaints, not just those filed by prisoners."). In other words, the IFP statute mandates sua sponte dismissal on these grounds. *See Hebrard v. Nofziger*, 90 F.4th 1000, 1006-07 (9th Cir. 2024) ("[Section] 1915(e) not only permits but requires a district court to dismiss an [IFP] complaint that fails to state a claim.") (simplified); *Chavez v. Robinson*, 817 F.3d 1162, 1167-68 (9th Cir. 2016) ("[Section] 1915 [previously] required courts to dismiss only those cases that were 'frivolous or malicious[,]' . . . [but] the current IFP statute provides additional, detailed grounds for dismissal—including mandatory dismissal of any claim that 'seeks monetary relief against a defendant who is immune from such relief.'") (citations omitted).

## II.    PLEADING REQUIREMENTS

It is well established that the "same substantive rules apply to Rule 12(b)(6) and [Section] 1915(e) dismissals for failure to state a claim." *Hebrard*, 90 F.4th at 1007 (citing *Lopez*, 203 F.3d at 1127-28). To survive a motion to dismiss under Rule 12(b)(6), a plaintiff's "complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. (citing *Twombly*, 550 U.S. at 556). Although "[t]he plausibility standard is not akin to a 'probability requirement,' . . . it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id*. (quoting *Twombly*, 550 U.S. at 556). "Where a [plaintiff's] complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.'" *Id*. (quoting *Twombly*, 550 U.S. at 557).

///

### III.     SELF-REPRESENTED PLAINTIFFS

Courts "have a duty to read a pro se complaint liberally," *Sernas v. Cantrell*, 857 F.

App'x 400, 401 (9th Cir. 2021), and should treat "pro se litigants . . . with 'great leniency' when

evaluating compliance with 'the technical rules of civil procedure.'" *Seals v. L.A. Unified Sch.

Dist.*, 797 F. App'x 327, 327 (9th Cir. 2020) (quoting *Draper v. Coombs*, 792 F.2d 915, 924 (9th

Cir. 1986)). The Supreme Court, however, has also recognized that "[d]istrict [courts] have no

obligation to act as counsel or paralegal to pro se litigants." *Pliler v. Ford*, 542 U.S. 225, 231

(2004). Thus, there are limits on the leeway that courts must afford to self-represented litigants.

*See Washington v. Kijakazi*, 72 F.4th 1029, 1040 (9th Cir. 2023) ("[T]here are limits to what a

court must do to accommodate a party appearing pro se." (citing *Pliler*, 542 U.S. at 231)); *see

also Atkins v. Montgomery*, No. 20-56007, 2024 WL 3594386, at *2 (9th Cir. July 31, 2024)

(explaining that the "magistrate judge was under no obligation to provide additional guidance or

instruction to [the plaintiff] on account of his pro se status, [nor was she] required to take into

account the amount of time remaining on [the plaintiff's] one-year statute of limitations in

requiring a response to her order," and noting that under Supreme Court precedent, "[d]istrict

[courts] have no obligation to act as counsel or paralegal to pro se litigants" (quoting *Pliler*, 542

U.S. at 231)).

### DISCUSSION

Defendants move to dismiss Jacobson's operative complaint pursuant to Rules 12(b)(1)

and 12(b)(6). (*See* Defs.' Mot. Dismiss ("Defs.' Mot.") at 3, 7, 9-10, 12, ECF No. 17; Atlas'

Adoption Defs.' Mot. Dismiss at 1, ECF No. 21, adopting AH Gresham, AH Albion, and TMG's

motion to dismiss by reference, pursuant to Rule 10(c)). Defendants argue that the doctrines of

res judicata and collateral estoppel bar Jacobson's claims, most of Jacobson's claims are time-

barred, Jacobson failed to exhaust his administrative remedies under the Federal Tort Claims Act

("FTCA"), and Jacobson fails to state a claim upon which relief can be granted. (Defs.' Mot. at 3, 7-9, 13-17.)

## I.    PRELIMINARY MATTERS

### A.    Judicial Notice

Defendants request that the Court take judicial notice of court records from Jacobson's previously filed state court actions. (*See* Defs.' Mot. at 2 n.1 & 4 nn.3-4, requesting judicial notice; Stockton Decl. ¶¶ 1-2 & Exs. 1-5, ECF No. 17 at 19-71, attaching a declaration and court records).

Courts records are the proper subject of judicial notice. *See United States v. Aguilar*, 782 F.3d 1101, 1103 n.1 (9th Cir. 2015) ("[Courts] may take notice of proceedings in other courts, . . . if those proceedings have a direct relation to matters at issue.") (simplified). For example, in *Wassmann v. South Orange County Community College District*, No. 23-55671, 2025 WL 830449, at *1 n.1 (9th Cir. Mar. 17, 2025), the Ninth Circuit took "judicial notice of court records from several proceedings in which [the plaintiff] raised similar claims." *Id.* Similarly, in *Lutge v. Harrington*, No. 23-15057, 2024 WL 654915, at *3 (9th Cir. Feb. 16, 2024), the Ninth Circuit took "judicial notice of the existence of . . . state court pleadings as publicly filed court records, but not the truth of the statements and assertions made within those pleadings," because the "parallel state case [was] relevant to th[e] appeal and inform[ed] [its] analysis." *Id.*

Jacobson acknowledges that it is appropriate for the Court to take judicial notice of the "existence of prior filings and judgments." (Pl.'s Resp. Defs.' Mot. Dismiss ("Pl.'s Resp.") at 5, ECF No. 27, acknowledging that "[t]he Court may notice the existence of prior filings and judgments"). Consistent with the authorities above, the Court grants Defendants' request to take

judicial notice of court records from Jacobson's state court actions.[5] (*See* Defs.' Mot. at 2 n.1 & 4

nn.3-4, requesting judicial notice; Stockton Decl. Exs. 2-5, attaching the state court records).

## B.    Operative Pleading

Defendants filed their pending motion to dismiss on August 14, 2025, nearly a week after

Jacobson filed a second amended complaint. (Defs.' Mot. at 18; SAC at 1, 23.) In their motion,

however, Defendants seek dismissal of the first amended complaint that Jacobson filed on July 3,

2025, twenty-one days after he filed this action. (*See* Defs.' Mot. at 2 & Pl.'s Resp. at 2, noting as

much).

Where an "amended complaint suffers from the same deficiencies as the [previously

filed] complaint, it is within [a district] court's discretion to consider a motion based on the

[previously filed] complaint as if it were based on the amended complaint." *Flying Heliball, LLC

v. Zero Zero Robotics, Inc.*, No. 08:24-cv-01838, 2024 WL 5265555, at *3 (C.D. Cal. Dec. 6,

2024) (quoting *Bisson v. Bank of Am., N.A.*, No. 12-cv-00995, 2012 WL 5866309, at *1 (W.D.

Wash. Nov. 16, 2012)). As demonstrated below, Jacobson's second amended complaint suffers

from the same deficiencies as his previously filed complaints. As such, the Court exercises it

---

[5] Jacobson also argues that Defendants' motion depends in part on "contested factual narratives," which the Court "should not adopt" at this stage of the proceedings. (Pl.'s Resp. at 5.) The Court does not assume the "truth of the statements and assertions" in the state court records, and agrees there is a "prohibition against resolving factual disputes at the pleading stage." *Lutge*, 2024 WL 654915, at *3 (declining to take judicial notice of "the truth of the statements and assertions made within [state court] pleadings"); *cf. Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988, 1003 (9th Cir. 2018) ("[U]nlike judicial notice, a court may assume an incorporated document's contents are true for purposes of a motion to dismiss under Rule 12(b)(6). . . . [But] it is improper to assume the truth of an incorporated document if such assumptions only serve to dispute facts stated in a well-pleaded complaint. This admonition is, of course, consistent with the prohibition against resolving factual disputes at the pleading stage.") (simplified).

discretion to treat Defendants' motion to dismiss as a challenge to Jacobson's second amended complaint.

## II.    EXHAUSTION

Defendants argue that the Court "lacks subject matter jurisdiction over [Jacobson's] claims," because he failed to exhaust his administrative remedies under the FTCA.[6] (Defs.' Mot. at 8-9.)

### A.    Applicable Law

The FTCA provides that "[a]n action shall not be instituted upon a claim against the United States . . . unless the claimant shall have first presented the claim to the appropriate Federal agency and his claim shall have been finally denied by the agency." 28 U.S.C. § 2675(a). The FTCA also provides that the "[t]he failure of an agency to make final disposition of a claim within six months after it is filed shall, at the option of the claimant any time thereafter, be deemed a final denial of the claim for purposes of this section." *Id.* Importantly, the Ninth Circuit has explained that "[t]he FTCA's exhaustion requirement is jurisdictional and may not be waived." *D.L. ex rel. Junio v. Vassilev*, 858 F.3d 1242, 1244-45 (9th Cir. 2017); *cf. Carr v. Giron*, 752 F. App'x 434, 435-36 (9th Cir. 2018) (analyzing separately the district court's dismissal of the self-represented plaintiff's Eighth Amendment and FTCA claims under Rules 12(b)(1) and 12(b)(6)).

///

---

[6] Defendants do not invoke a specific rule in arguing that the Court "lacks subject matter jurisdiction over [Jacobson's] claims." (Defs.' Mot. at 8-9.) In support of their argument, however, Defendants cite *Martinez v. United States*, No. 21-cv-01542, 2022 WL 1271143, at *3 (S.D. Cal. Apr. 28, 2022), a case in which the district court dismissed the case pursuant to Rule 12(b)(1). (*See* Defs.' Mot. at 9); *cf. Martinez*, 2022 WL 1271143, at *3 ("Since the [c]ourt decides the matter under Rule 12(b)(1), there is no need . . . to analyze [the] arguments as to Rule 12(b)(6) or Rule 41(b) dismissal").

**B.    Analysis**

The Court concludes that it has subject matter jurisdiction over Jacobson's claim under Title III of the ADA. The Court therefore denies Defendants' motion to dismiss under Rule 12(b)(1).

"'In 1946, Congress passed the FTCA, which waived the sovereign immunity of the United States for certain torts committed by federal employees' acting within the scope of their employment." *Brownback v. King*, 592 U.S. 209, 212 (2021) (quoting *FDIC v. Meyer*, 510 U.S. 471, 475-76 (1994)). Federal district "courts have jurisdiction over these claims if they are 'actionable under [Section] 1346(b).'" *Id.* (quoting *Meyer*, 510 U.S. at 477). Notably, a plaintiff must "allege the[se] six elements" for a court to consider the claim "actionable" under Section 1346(b):

> [The claim must be] (1) against the United States, (2) for money damages, . . . (3) for injury or loss of property, or personal injury or death (4) caused by the negligent or wrongful act or omission of any employee of the [g]overnment (5) while acting within the scope of his office or employment, (6) under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred.

*Id.* (quoting *Meyer*, 510 U.S. at 477); *see also Snow-Erlin v. United States*, 470 F.3d 804, 808 (9th Cir. 2006) (noting that in evaluating whether the FTCA bars a proposed claim, "this circuit looks beyond the labels used" and "characterization [of] the conduct on which the claim is based") (simplified).

Jacobson does not allege Section 1346(b)'s six elements. (*See* SAC at 1-24.) Defendants do not argue otherwise, nor do they explain how or why all of Jacobson's federal and state claims against Defendants would be subject to the FTCA's exhaustion requirement. (*See* Defs.' Mot. at 8-9, failing to offer an explanation or support for Defendants' conclusory statement that Jacobson was required to present all of his claims in writing to the U.S. Department of Health and Human

Services before commencing this lawsuit; *cf. id.* at 12, arguing that Jacobson fails to state a plausible claim under the ADA, which applies to "private entities that own, lease, or operate a place of public accommodation" (quoting *Doe v. CVS Pharmacy, Inc.*, 982 F.3d 1204, 1212 (9th Cir. 2020))).

Courts have consistently held that the FTCA's requirement of exhaustion of remedies does not limit ADA claims.[7] *Cf. Stringer v. White*, No. 07-cv-05516-SI, 2008 WL 344215, at *1, *3-7 & n.5 (N.D. Cal. Feb. 6, 2008) (noting that an assistant U.S. attorney appeared and filed a certification that the defendant's medical clinic was a "federally deemed health center" and that the defendant was "covered under the [FTCA]" because she was "acting within the course and scope of her employment at all times" at a "federal health center," holding that the plaintiff's "ADA discrimination claim . . . [was] not a tort and [did] not fall under the FTCA" and thus "consider[ing] the[] claim[] separately" and dismissing for failure to state a claim, and "mak[ing] no determination at th[at] juncture as to whether [the defendant's medical clinic], a federally funded health center, [was] a public or private entity for purposes of the ADA"); *cf. Doe v. United States*, 704 F. Supp. 3d 1049, 1058 (C.D. Cal. 2023) (distinguishing *Stringer* because it did not "reach[] the question [that the district] [c]ourt face[d]" and held only that ADA "claims

_____

[7] Relatedly, in *Acevedo*, the Ninth Circuit reversed a district court's dismissal of an ADA action "under Rule 12(b)(1) for lack of subject matter jurisdiction," and determined that the district court's "jurisdictional findings [were] inappropriate . . . because Title III of the ADA provide[d] both federal subject matter jurisdiction and the basis for a claim for relief." *Acevedo v. C & S Plaza Ltd. Liab. Co.*, No. 20-56318, 2021 WL 4938124, at *1-2 (9th Cir. Oct. 22, 2021) (citing 42 U.S.C. § 12182(a)). The Ninth Circuit also noted that (1) "[e]ven construing the district court's order not as a Rule 12(b)(1) dismissal for lack of subject matter jurisdiction, but as a Rule 56 dismissal on summary judgment, . . . there exist[ed] a genuine dispute of material fact," and (2) "[c]onclusory opinions that [a] facility is free of non-compliant issues, or that [a] particular feature[], e.g., the accessible parking . . . , compl[ies] with all applicable access requirements, are an insufficient basis on which to grant summary judgment[.]" *Id.* at *2 (simplified).

are not limited by the FTCA's requirement of exhaustion of remedies"); *Anonymous v. United States*, No. 16-cv-0725, 2017 WL 1479233, at *5 (S.D. Cal. Apr. 25, 2017) (finding the federal defendants' reliance on *Stringer* "misplaced because the case involved a disability-discrimination claim *under federal law* (i.e., the ADA) and, therefore, . . . [did] not fall within the FTCA's scope").

Defendants also argue that Jacobson fails to allege additional "facts about how [his unidentified disability] meets federal [j]urisdiction." (Defs.' Mot. at 12.) Jacobson, however, alleges that because of his disability and impaired mobility, he uses a wheelchair and requires a disabled parking permit and passageways that are sufficiently wide and graded for his wheelchair.[8] (*See* SAC ¶¶ 1-2, 4, 13, 41-42.) Thus, Jacobson presents a colorable claim under the ADA, which precludes any dismissal under Rule 12(b)(1). *See Acevedo*, 2021 WL 4938124, at *2 ("Title III of the ADA provide[d] both federal subject matter jurisdiction and the basis for a claim for relief[.]"); *see also Arbaugh v. Y&H Corp.*, 546 U.S. 500, 513 n.10 (2006) ("A claim invoking federal-question jurisdiction . . . may be dismissed for want of subject-matter jurisdiction if it is not colorable, i.e., if it is 'immaterial and made solely for the purpose of obtaining jurisdiction' or is 'wholly insubstantial and frivolous.'" (first quoting *Bell v. Hood*, 327 U.S. 678, 682-83 (1946); and then citing *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 89 (1998)); *Fulfillment Servs., Inc. v. United Parcel Serv., Inc.*, 528 F.3d 614, 618-19 (9th Cir. 2008) ("[T]he absence of a valid (as opposed to arguable) cause of action does not implicate subject-

---

[8] The Court also notes that it granted Defendants' request to take judicial notice of a state court pleading in which Jacobson alleges that his impaired mobility stems from a spinal injury, myelopathy, and peripheral neuropathy. (*See* Stockton Decl. Ex. 3 at 9; Defs.' Mot. at 2 n.1 & 4 nn.3-4.)

matter jurisdiction, i.e., the court's statutory or constitutional power to adjudicate the case.")

(simplified).

For these reasons, the Court concludes that it has subject matter jurisdiction over

Jacobson's ADA claim, which Defendants fail to demonstrate is subject to the FTCA's

exhaustion requirement. Accordingly, the Court denies Defendants' motion to dismiss pursuant to

Rule 12(b)(1).

## III.     PRECLUSION

Defendants argue that the Court should dismiss Jacobson's complaint with prejudice

because the doctrines of res judicata and collateral estoppel (also known as claim and issue

preclusion) bar Jacobson's claims.[9] (Defs.' Mot. at 3-7.) As explained below, the Court agrees.

### A.     Applicable Law

Under the Full Faith and Credit Act, 28 U.S.C. § 1738, "federal courts 'give the same

preclusive effect to state court judgments as they would be given in the state in which they are

rendered.'" *Jamgotchian v. Ferraro*, 93 F.4th 1150, 1154 (9th Cir. 2024); *see also Brother Recs.,*

*Inc. v. Jardine*, 432 F.3d 939, 943 (9th Cir. 2005) (making the same observation regarding the

"Full Faith and Credit Act" (citing 28 U.S.C. § 1738)). Accordingly, "under 28 U.S.C. § 1738,

the preclusive effect of state court judgments is a matter of state law." *Miroth v. County of*

*Trinity*, 136 F.4th 1141, 1149 (9th Cir. 2025) (citing *Lance v. Dennis*, 546 U.S. 459, 466 (2006)).

Given that an Oregon court issued the judgment that allegedly gave "rise to preclusion,"

the Court must "apply Oregon law to determine the judgment's preclusive effect." *Allison v.*

*Dolich*, 815 F. App'x 135, 136 n.1 (9th Cir. 2020) (simplified) (quoting *Rangel v. PLS Check*

---

[9] Defendants rely on the judgment that the state court entered on June 24, 2025. (Defs.' Mot. at 4 nn.3-4.)

*Cashers of Cal., Inc.*, 899 F.3d 1106, 1110 n.2 (9th Cir. 2018)). Under Oregon law, "[t]he doctrine of claim preclusion, formerly known as *res judicata*, generally prohibits a party from relitigating the same claim or splitting a claim into multiple actions against the same opponent." *Bloomfield v. Weakland*, 123 P.3d 275, 279 (Or. 2005). As the Oregon Supreme Court has explained, claim preclusion bars claims that a plaintiff pursued or could have joined in an earlier-filed action:

> "[A] plaintiff who has prosecuted one action against a defendant through to a final judgment binding on the parties is barred on *res judicata* grounds from prosecuting another action against the same defendant where the claim in the second action is one which is based on the same factual transaction that was at issue in the first, seeks a remedy additional or alternative to the one sought earlier, and is of such a nature as could have been joined in the first action."
>
> . . . Th[is] rule forecloses a party that has litigated a claim against another from further litigation on that same claim on any ground or theory of relief that the party could have litigated in the first instance.

*Id.* (first quoting *Rennie v. Freeway Transp.*, 656 P.2d 919, 924 (Or 1982); and then citing *Dean v. Exotic Veneers, Inc.*, 531 P.2d 266, 269 (Or. 1975)); *see also Aguirre v. Albertson's, Inc.*, 117 P.3d 1012, 1022 (Or. Ct. App. 2005) (noting that under the approach "endorsed by federal and Oregon precedents alike, claim preclusion bars not only claims that have actually been litigated, but any claim arising out of the same transaction or series of connected transactions") (citations omitted).

### B.    Analysis

The Court concludes that claim preclusion bars the federal and state claims that Jacobson asserts here.

The Court recognizes at the outset Jacobson appealed the judgment that gives rise to claim preclusion, and the appeal remains pending in state court. Under Oregon law, "the pendency of an appeal does not prevent a judgment from operating as res judicata or collateral

estoppel—i.e., issue preclusion." *Berg ex rel. Est. of Higbee v. Benton*, 443 P.3d 714, 717 (Or. Ct. App. 2019) (first quoting *Ron Tonkin Gran Turismo v. Wakehouse Motors*, 611 P.2d 658, 662 (Or. Ct. App. 1980); and then citing *Nelson v. Emerald People's Util. Dist.*, 862 P.2d 1293, 1296 (Or. 1993))). Thus, Jacobson's appeal does not preclude the state judgment from operating as res judicata.[10]

Oregon law directs courts to consider "six factors" to "determine whether the claims in the two actions are based on the same underlying transaction[.]" *Allison*, 815 F. App'x at 137 (citing *Whitaker v. Bank of Newport*, 836 P.2d 695, 698-701 (Or. 1992)). Specifically, court consider:

> (1) whether the events giving rise to the later claims occurred before the first action was brought; (2) whether the events giving rise to liability in each action were physically close to one another; (3) whether the origin of the harm in one case is related to the other; (4) whether the defendants' conduct was motivated by a common end, scheme or plan; (5) whether it would be convenient to try all the claims in a single proceeding; and (6) whether the acts underlying the harm in each action are similar.

*Id.* (simplified).

The foregoing factors support the Court's conclusion that the same factual transactions underlie Jacobson claims in both his pending federal lawsuit and previously filed state court action. To be sure, the claims that Jacobson asserts in this federal lawsuit are nearly identical to the claims and allegations that he made in the amended complaint that he filed in state court on May 8, 2025.

---

[10] "Although res judicata is an affirmative defense[,] . . . dismissal is proper when[, as here,] it is clear from the face of [a self-represented plaintiff's] complaint, and matters of which judicial notice may be taken, that res judicata bars the claims[.]" *McBridge v. Quality Carriers, Inc.*, No. 22-2569, 2023 WL 2784867, at *2 (7th Cir. Apr. 5, 2023) (first citing *Carr v. Tillery*, 591 F.3d 909, 913 (7th Cir. 2010), then citing *Walker v. Thompson*, 288 F.3d 1005, 1009 (7th Cir. 2002); and then citing *Parungao v. Cmty. Health Sys., Inc.*, 858 F.3d 452, 457 (7th Cir. 2017))).

These examples confirm that Jacobson's cases are based on the same underlying transactions:

- In his amended state court complaint, Jacobson alleged he suffers from severe mobility limitations because of a 2011 spinal injury, myelopathy, and peripheral neuropathy, and that the named defendants (TMG and AH Albion) were "pursuing an illegal course of behavior to harm" him by "being openly hostile to persons of age or disability," "communicat[ing] that [he was] unwelcome at the property," and refusing to reassign a wheelchair-accessible parking spot that they had assigned to "another neighbor," despite Jacobson's "formal written requests dating back years now." (Stockton Decl. Ex. 3 at 6, 9-10.) Jacobson added that the defendants' openly hostile behavior toward him prompted him to file his 2023 federal lawsuit under the FHA and ADA (i.e., Case No. 3:23-cv-01551-HZ), which he voluntarily dismissed in 2024. (*See id.* at 2.)

- Additionally, in his amended state court complaint, Jacobson alleged that the GPA was "not well maintained" and the defendants "routinely ignored" his "multiple maintenance requests" and security issues like outdoor hallway and garage lighting, and allowed the premise to "become a distribution hub for illegal narcotics and open gang and [c]artel related activity," which occurred "everywhere, all night long." (*Id.* at 2-3, 8.) He also alleged that as a result of these actions, he "experienced at least [four] major burglaries and/or home invasions," including a June 2024 intrusion at "knife point" and January 2024

incident in which a thief stole a million dollar "prototype" from his garage. (*Id.* at 4.)

- Furthermore, in his amended state court complaint, Jacobson alleged that the defendants' contractors stole his personal property and that the defendants "refus[ed] to take any responsibility for the acts of their own contractors." (*Id.*) Jacobson also alleged that the defendants engaged in financial abuse of a vulnerable person by "imposing excessive rent," failed to "maintain the property in a habitable and safe condition," "overcharg[ed] residents," billed him for "fraudulent late fees" and "late charges," and retaliated against him by commencing "wrongful" and "meritless" eviction proceedings. (*Id.* at 8, 13, 18-19, 20-22.)

- Based on these allegations, Jacobson asserted claims against TMG and AH Albion for violation of Title III of the ADA, Oregon's financial abuse statute, the ORLTA, the civil Racketeering and Corrupt Organizations Act, negligence, wrongful eviction, and declaratory and injunctive relief. (*Id.* at 19-25.)

By comparison, in his pending federal lawsuit, Jacobson asserts claims against TMG, AH Albion, and their privy (Atlas) for violations of the FHA, Title III of the ADA, the ORLTA, Oregon's financial abuse statute, fraud, negligence, conversion, trespass to chattels, breach of the implied covenant of good faith and fair dealing, IIED, and declaratory and injunctive relief. (*See* SAC at 12-22, listing each claim). Significantly, the federal and state law claims that Jacobson asserts in this case are based on the same events of which he complained in his amended state

court complaints, thus confirming that his two actions are based on the same underlying transactions:

- Like his state action, Jacobson alleges that in 2020, he began asking for a "simple space swap" because he need the wheelchair-accessible parking spot that the GPA's management assigned to "other tenants," and the GPA's management has repeatedly denied his accommodation request. (*Id.* ¶¶ 4, 13, 42-43, 54.)

- Jacobson similarly alleges that beginning in 2020, the GPA's management started overbilling him for utilities and "tack[ing] on" unwarranted "late fees" to his account and that a 2023 city inspection later confirmed that the GPA "ignored basic habitability duties," such as a "failed GFCI outlets, sewer backflows, inoperative ventilation, rooms without heat, broken locks, and exterior lighting that remained inoperative for years." (*Id.* ¶¶ 3, 5, 8, 35-36, 44, 68.)

- Jacobson also alleged that between 2021 and 2024, security and maintenance issues "resulted in multiple burglaries," contractors' removal of "personal property" and the theft of his "prototype device," which he "value[s] at more than $1 million" based on "material and labor cost." (*Id.* ¶¶ 5-7, 27-29, 32-33, 37-39, 83-84.)

- Jacobson further alleges that in spring and summer 2024, the GPA retaliated against him by sending four eviction notices during a thirty-day period, and that the GPA failed to respond to his letters "proposing mediation and offering to resolve disputes without litigation" and refused to participate in an eviction

diversion program or "acknowledge [his] status as a disabled person."

(*Id.* ¶¶ 10, 45, 49.)

- Finally, Jacobson alleges that in April and May 2025 (i.e., the month before and same month that he filed his amended complaint in state court), the GPA notified him that it planned to increase his rent by ten percent and the GPA's new on-site manager (i.e., Atlas) "immediately revoked parking privileges for mobility devices and began refusing to accept rent unless [it was] accompanied by a complete waiver of disability accommodation requests."

(*Id.* ¶¶ 24-25.)

Given these facts, the Court concludes that the same factual transactions underlie Jacobson's claims in both his pending federal lawsuit and previously filed state court action. The complained-of conduct in this case not only occurred in or (for the most part) long before the month in which Jacobson filed his amended state court complaint, but they are also based on identical (or very similar) events. Given the physical and temporal proximity, origin of the harm, and the same defendants and their privy being "motivated by a common end, scheme or plan," Jacobson could have litigated all of his claims in a single state court proceeding. *See Allison*, 815 F. App'x at 137 (describing the six factors that apply here (citing *Whitaker*, 836 P.2d at 698-701)).

The state court dismissed Jacobson's amended complaint with prejudice, and Jacobson's appeal remains pending. The question before this Court, however, is simply whether claim preclusion applies, not whether the state court reached the correct decision. *See Sullivan Equity Partners, LLC v. City of Los Angeles*, No. 24-2893, 2025 WL 752499, at *1 (9th Cir. Mar. 10, 2025) ("[The plaintiff] tries to reargue the merits . . . [but] [t]he sole question before us is not

whether the state court reached the right decision, but whether issue preclusion applies." (citing *Chen ex rel. Chen v. Albany Unified Sch. Dist.*, 56 F.4th 708, 726 (9th Cir. 2022))). With respect to that question, the Court finds that claim preclusion applies and bars Jacobson's re-litigation of his current claims because Jacob alleges grounds and theories that he did or could have raised in his prior state court action. *See Bloomfield*, 123 P.3d at 279 (noting that claim preclusion bars re-litigation of "any ground or theory of relief that the party could have litigated in the first instance"); *Aguirre*, 117 P.3d at 1022 (explaining that "[a]s long as the parties to [a previous filed] action had a 'full and fair opportunity to litigate,' whether or not they actually did so, claim preclusion prevents relitigation of the same or related claims in order to protect 'adversaries from the expense and vexation attending multiple lawsuits[,]' as well as to conserve judicial resources and minimize the possibility of inconsistent decisions") (simplified).

For these reasons, the Court grants Defendants' motion to dismiss Jacobson's claims on the ground that they are barred by claim preclusion. *See Aguirre*, 117 P.3d at 1022 ("[A] subsequent claim is barred by a prior judgment if the earlier litigation proceeded to final judgment, involved the same parties, and concerned a claim arising out of the same transaction or series of related transactions.") (simplified); *cf. Pritchett v. Fairley*, 730 F. App'x 549, 550 (9th Cir. 2018) (noting that "[a] dismissal without prejudice cannot give rise to claim preclusion," and holding that the district court erred in finding that claim preclusion barred the plaintiff's retaliation and ADA claims because the record [was] not clear that [the plaintiff's] prior state court . . . case was dismissed with prejudice" (quoting *Clark v. Gates*, 906 P.2d 863, 866 (Or. Ct. App. 1995))); *Levi v. Anchorage Sch. Dist.*, No. 23-35170, 2024 WL 1328778, at *1 (9th Cir. Mar. 28, 2024) (applying the elements of federal claim preclusion and holding "[t]he district court properly dismissed [the self-represented plaintiff's] claims concerning his

unemployment benefits as barred by res judicata because [he] previously raised nearly identical claims against the same defendants or their privies in a prior federal action that resulted in a final judgment on the merits.").

The Court also grants Defendants' request to dismiss this action with prejudice and without leave to amend (*see, e.g.*, Defs.' Mot. at 7), because amendment would be futile. *See Wassmann*, 2025 WL 830449, at *1 ("The district court did not abuse its discretion by denying leave to amend because [the plaintiff's] claims [we]re barred by res judicata and thus amendment would be futile." (citing *Rutman Wine Co. v. E. & J. Gallo Winery*, 829 F.2d 729, 738 (9th Cir. 1987))); *see also Pugh v. Anderson*, No. 21-16984, 2022 WL 17223041, at *1 (9th Cir. Nov. 25, 2022) ("The district court properly dismissed [the plaintiff's] action as duplicative because it [wa]s based on the same factual allegations as those in [an earlier-filed case.]").

## CONCLUSION

For the reasons stated, the Court GRANTS IN PART and DENIES IN PART Defendants' motion to dismiss (ECF No. 17), and dismisses this action with prejudice and without leave to amend.

**IT IS SO ORDERED.**

DATED this 31st day of December, 2025.

*Stacie F. Beckerman*

_____
HON. STACIE F. BECKERMAN
United States Magistrate Judge